IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

UNITED STATES OF AMERICA,

    Plaintiff,

v.

                                                        Criminal No. 03-1101 WJ

CARLA LYN CLIFTON,

    Defendant.

**MEMORANDUM OPINION AND ORDER ON THE
APPLICATION OF THE CROSS REFERENCE
PROVISION OF THE SENTENCING GUIDELINES**

    THIS MATTER comes before the Court pursuant to issues raised in this case in the Pre-Sentence Report (PSR) and the parties' sentencing memoranda concerning the application of the cross reference provision of U.S.S.G. § 2J1.3(c). A hearing on the issue was held on February 24, 2004. After considering the argument of counsel, the submissions of the parties, the recommendations in the PSR, and the applicable law, I find that the cross reference provision of U.S.S.G. § 2J1.3(c) applies in determining the guideline sentence for Defendant Carla Lynn Clifton ("Defendant") and results in a base offense level of 30.[1]

    On September 11, 2003, a Superceding Indictment was filed in the United States District Court for the District of New Mexico charging Defendant with three counts of perjury before a

---

    [1] The base offense level of 30 does not include the 2 level increase requested by the Government pursuant to U.S.S. G. § 3C1.1.

Grand Jury in violation of 18 U.S.C. § 1623. The Superceding Indictment alleged that Defendant gave perjured testimony before a Grand Jury on February 25, 2003 and again on May 28, 2003. On October 21, 2003, a jury trial commenced. On October 23, 2003 Defendant was found guilty of all three counts of the Superceding Indictment.

The evidence at trial indicated that DEA agents investigating cocaine trafficking by an individual named Robert Beal learned that a cellular telephone with the number 450-5251 was being used by an individual named Jaime Mendoza during possible drug transactions. Agents then learned that the cellular phone was subscribed by Defendant. Agents then began investigating Defendant's involvement with Jaime Mendoza and Robert Beal.

On October 28, 2002, agents executed a warrant at the home of Robert Beal and found more than 1.4 kilograms of crack cocaine. After the arrest of Robert Beal, agents learned that Beal's source for the cocaine was a person named Jaime who could be reached at a cellular phone with the number 450-5251. Agents obtained toll records for Beal's cellular phone and found multiple contacts with 450-5251. Agents also learned that 450-5251 was canceled two days after Beal's arrest.

On January 27, 2003, after learning that Defendant was the subscriber to 450-5251, DEA agents went to her home in an attempt to interview her. Defendant was not home, but her father informed agents that she had received a cellular telephone for Jaime Mendoza because Mendoza had credit problems. That same evening, the agents met Defendant at her home. During a brief discussion in the driveway of the home, Defendant confirmed that the number 450-5251 was subscribed to her. She said she had gotten the phone for Mendoza because he had credit problems and that he was the one who used the phone. She also stated that she canceled the

phone at Mendoza's request when he told her the phone had been stolen. Defendant Clifton and the agents then drove separately to a nearby gas station to continue the interview. During the interview at the gas station, Defendant Clifton reiterated that she had gotten the phone for Mendoza, that Mendoza had used the phone, and that she had canceled the phone at Mendoza's request. Defendant Clifton agreed to meet with agents at the DEA office the next day to give a more detailed statement.

The next day, January 28, 2003, Defendant Clifton contacted Special Agent West. She stated that 450-5251 was her phone, that only she had used it, and that she had never allowed Mendoza to use the phone. She denied having told the agents a different story the previous day, and declined any further interviews.

Defendant was subpoenaed to testify before a grand jury on February 25, 2003. In front of the grand jury, Defendant testified under oath that she had not gotten 450-5251 for Mendoza, that she had not let Mendoza use the cellular phone, and that she had not canceled the phone at Mendoza's request. She also denied that she had ever told DEA agents that she had gotten the phone for Mendoza, that she had let him use it, or that she had canceled the phone at Mendoza's request. Defendant was given an opportunity to appear voluntarily before the grand jury on May 28, 2003 to correct her earlier testimony. She voluntarily appeared and reaffirmed her earlier testimony. In light of Defendant's testimony, the grand jury did not indict Mendoza until additional evidence was obtained.

In addition to the testimony of the agents, the evidence at trial tending to show that Defendant's testimony before the grand jury was false were toll records from 450-5251 and from another cellular phone subscribed to Defendant and admittedly used by her as a personal cellular

phone. Comparison of the records of these two phones showed that the patterns of calls were decidedly and markedly different indicating that the phones were used by different persons. Also, the toll records showed that there were frequent time overlaps in the use of the two phones indicating they were being used by different persons. Customer care records from the cellular phone company showed that Defendant had made Mendoza an authorized user on the 450-5251 account. In January 2002, Defendant changed the billing address for 450-5251 from her home to Mendoza's home address.

The grand jury transcript of February 25, 2003, introduced as evidence at the trial, shows that Defendant was told at the start of her testimony that the grand jury was investigating crack cocaine trafficking. The grand jury transcript of May 28, 2003, also introduced as evidence at the trial, shows that Clifton was again informed at the beginning of her testimony that the grand jury was investigating drug trafficking activity. At the hearing on sentencing issues held February 24, 2004, DEA agents testified that, during their interview of Defendant on January 27, 2003, they informed her that they were investigating drug trafficking after having found more than four pounds of crack cocaine at Robert Beal's home.

U.S.S.G. § 2J1.3 (2002), titled Perjury or Subornation of Perjury: Bribery of Witness, is the sentencing provision applicable to Defendant's convictions. This provision calls for a base offense level of 12 with adjustments for specific offense characteristics. § 2J1.3(a) and (b).[2] Section 2J1.3(c) is a cross-reference provision and calls for application of § 2X3.1 (Accessory After the Fact) if a defendant's offense involved perjury in respect to a criminal offense and if the resulting offense level under § 2X3.1 is greater than that determined under § 2J1.3(a) and (b).

---

[2]The parties agree that the 2002 version of the Sentencing Guidelines apply to Defendant.

Defendant urges that the perjury is not "in respect to a criminal offense" unless there is sufficient evidenced to show that the person committing perjury was actually involved in the underlying criminal offense. Case law makes clear that perjury is "in respect to a criminal offense" if it occurs in a grand jury's investigation of a criminal offense and the perjurer knew when he or she testified that the grand jury was investigating the criminal offense. See United States v. Blanton, 281 F.3d 771 (8th Cir. 2002); United States v. Suleiman, 208 F.3d 32 (2d Cir. 2000); United States v. Conley, 186 F.3d 7 (1st Cir. 1999); United States v. Leon-Reyes, 177 F.3d 816 (9th Cir. 1999). There is no requirement that the person committing perjury have been involved in the underlying offense.

The evidence in this case establishes that Defendant knew at the time of her grand jury testimony that the grand jury was investigating crack cocaine trafficking. Thus, Defendant's perjured testimony was "in respect to a criminal offense" and the cross-reference provision of § 2J1.3(c) applies. The Court then looks to § 2X3.1 to determine the appropriate base offense level for sentencing in this case.

Section 2X3.1 calls for a base offense level six levels lower than the offense level for the underlying offense. The underlying offense in this case was trafficking crack cocaine. Therefore, in order to determine the base offense level, the Court must reference the Drug Quantity Table in § 2D1.1(c). The issue arises, then, whether a specific drug quantity is attributable to Defendant, and the Government must show, by a preponderance of the evidence, that some quantity of drug is attributable to Defendant in that, at the time of her perjured testimony, she knew or should have

known that the grand jury investigation involved that quantity of drug. See United States v. Renteria, 161 F.Supp.2d 1294 (D.N.M. 2001).[3]

The DEA agents' testimony at the February 24, 2004 hearing was credible, and I find that the agents told Defendant during her January 27, 2003 interview that they were investigating trafficking in crack cocaine involving more than four pounds. Thus, at the time Defendant gave perjured testimony to the grand jury in both February and May of 2003, she knew or should have known that the grand jury was investigating trafficking of at least 1.4 kilograms (approximately 3.1 pounds) of crack cocaine.

The base offense level for an underlying offense involving 1.4 kilograms of cocaine base is 36 under § 2D1.1(c)(2). Pursuant to § 2X3.1, the base level then for Defendant's offenses of conviction is 30.

---

[3]Some courts do not require that a defendant being sentenced under § 2X3.1 have knowledge of the drug quantity involved in the underlying offense. See United States v. Arnold, -- F.Supp.2d --, 2003 WL 23279979 (W.D. Va. 2003). The Government puts forth that it must prove that Defendant, at the time she gave perjured testimony to the grand jury, knew or should have known that the investigation involved a quantity of drugs that yields a higher offense level than if the cross reference were not applied. See Government's Response to Defendant's Objections to Presentence Report [Docket No. 64]. While the Government does not provide the legal basis for its proposition that it must prove Defendant's knowledge of some quantity above the minimum in the Drug Quantity Table, the Court accepts the Government's representation, and believes it is an appropriate conclusion in light of Tenth Circuit precedent such as United States v. Jones, 235 F.3d 1231, 1236-37 (10th Cir. 2000) in which the Tenth Circuit interpreted the Supreme Court's opinion in Apprendi v. New Jersey, 530 U.S. 466 (2000) to require that drug quantities be proved as an essential element of a drug related crime.

If the Government had no evidence of Defendant's knowledge of some specific quantity, the Court would apply the base level from the section of the Drug Quantity Table in which the specific drug, cocaine base, first appears. Cocaine base first appears in § 2D1.1(c)(14) and provides a base offense level of 12. This would result in a base offense level of 6 under § 2X3.1 which is below the base offense level in § 2J1.3. As such, the offense level for Defendant's convictions would be determined under § 2J1.3.

At the sentencing on Monday March 8, 2004, the Court will address first the Government's request that the two level increase under U.S.S.G. § 3C1.1 (Obstruction or Impeding the Administration of Justice) be applied to Defendant's base offense level. Second, the Court will consider Defendant's motion for downward departure under U.S.S.G. § 5K2.20 (Aberrant Behavior) and § 5K2.0 (Grounds for Departure). Finally, the Court will sentence the Defendant.

IT IS SO ORDERED.

_____
UNITED STATES DISTRICT JUDGE