IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

UNITED STATES OF AMERICA,

    Plaintiff,

v.

                                                       Criminal No. 03-1101 WJ

CARLA LYN CLIFTON,

    Defendant.

**MEMORANDUM OPINION AND ORDER WITHDRAWING**
**THE COURT'S MEMORANDUM OPINION AND ORDER**
**FILED FEBRUARY 27, 2004 AND SUBSTITUTING THIS**
**MEMORANDUM OPINION AND ORDER**

THIS MATTER comes before the Court pursuant to issues raised in this case in the Pre-Sentence Report (PSR) and the parties' sentencing memoranda concerning the application of the cross reference provision of U.S.S.G. § 2J1.3(c). A hearing on the issue was held on February 24, 2004. After considering the argument of counsel, the submissions of the parties, the recommendations in the revised PSR, and the applicable law, I filed a Memorandum Opinion and Order on February 27, 2004 [Docket No. 71] in which I found that the cross reference provision of U.S.S.G. § 2J1.3(c) applies in determining the guideline sentence for Defendant Carla Lynn Clifton ("Defendant") and results in a base offense level of 30. After further consideration, I hereby withdraw that Memorandum Opinion and Order. I now find that the cross reference provision of U.S.S.G. § 2J1.3(c) applies in determining the guideline sentence for Defendant. I make no further finding at this time with regard to Defendant's base offense level.

On September 11, 2003, a Superceding Indictment was filed in the United States District Court for the District of New Mexico charging Defendant with three counts of perjury before a Grand Jury in violation of 18 U.S.C. § 1623.  The Superceding Indictment alleged that Defendant gave perjured testimony before a Grand Jury on February 25, 2003 and again on May 28, 2003.  On October 21, 2003, a jury trial commenced.  On October 23, 2003 Defendant was found guilty of all three counts of the Superceding Indictment.

The evidence at trial indicated that DEA agents investigating cocaine trafficking by an individual named Robert Beal learned that a cellular telephone with the number 450-5251 was being used by an individual named Jaime Mendoza during possible drug transactions.  Agents then learned that the cellular phone was subscribed by Defendant.  Agents then began investigating Defendant's involvement with Jaime Mendoza and Robert Beal.

On October 28, 2002, agents executed a warrant at the home of Robert Beal and found more than 1.4 kilograms of crack cocaine.  After the arrest of Robert Beal, agents learned that Beal's source for the cocaine was a person named Jaime who could be reached at a cellular phone with the number 450-5251.  Agents obtained toll records for Beal's cellular phone and found multiple contacts with 450-5251.  Agents also learned that 450-5251 was canceled two days after Beal's arrest.

On January 27, 2003, after learning that Defendant was the subscriber to 450-5251, DEA agents went to her home in an attempt to interview her.  Defendant was not home, but her father informed agents that she had received a cellular telephone for Jaime Mendoza because Mendoza had credit problems.  That same evening, the agents met Defendant at her home.  During a brief discussion in the driveway of the home, Defendant confirmed that the number 450-5251 was

subscribed to her. She said she had gotten the phone for Mendoza because he had credit problems and that he was the one who used the phone. She also stated that she canceled the phone at Mendoza's request when he told her the phone had been stolen. Defendant Clifton and the agents then drove separately to a nearby gas station to continue the interview. During the interview at the gas station, Defendant Clifton reiterated that she had gotten the phone for Mendoza, that Mendoza had used the phone, and that she had canceled the phone at Mendoza's request. Defendant Clifton agreed to meet with agents at the DEA office the next day to give a more detailed statement.

The next day, January 28, 2003, Defendant Clifton contacted Special Agent West. She stated that 450-5251 was her phone, that only she had used it, and that she had never allowed Mendoza to use the phone. She denied having told the agents a different story the previous day, and declined any further interviews.

Defendant was subpoenaed to testify before a grand jury on February 25, 2003. In front of the grand jury, Defendant testified under oath that she had not gotten 450-5251 for Mendoza, that she had not let Mendoza use the cellular phone, and that she had not canceled the phone at Mendoza's request. She also denied that she had ever told DEA agents that she had gotten the phone for Mendoza, that she had let him use it, or that she had canceled the phone at Mendoza's request. Defendant was given an opportunity to appear voluntarily before the grand jury on May 28, 2003 to correct her earlier testimony. She voluntarily appeared and reaffirmed her earlier testimony. In light of Defendant's testimony, the grand jury did not indict Mendoza until additional evidence was obtained.

In addition to the testimony of the agents, the evidence at trial tending to show that Defendant's testimony before the grand jury was false were toll records from 450-5251 and from another cellular phone subscribed to Defendant and admittedly used by her as a personal cellular phone. Comparison of the records of these two phones showed that the patterns of calls were decidedly and markedly different indicating that the phones were used by different persons. Also, the toll records showed that there were frequent time overlaps in the use of the two phones indicating they were being used by different persons. Customer care records from the cellular phone company showed that Defendant had made Mendoza an authorized user on the 450-5251 account. In January 2002, Defendant changed the billing address for 450-5251 from her home to Mendoza's home address.

The grand jury transcript of February 25, 2003, introduced as evidence at the trial, shows that Defendant was told at the start of her testimony that the grand jury was investigating crack cocaine trafficking. The grand jury transcript of May 28, 2003, also introduced as evidence at the trial, shows that Clifton was again informed at the beginning of her testimony that the grand jury was investigating drug trafficking activity. At the hearing on sentencing issues held February 24, 2004, DEA agents testified that, during their interview of Defendant on January 27, 2003, they informed her that they were investigating drug trafficking after having found more than four pounds of crack cocaine at Robert Beal's home.

U.S.S.G. § 2J1.3 (2002), titled Perjury or Subornation of Perjury: Bribery of Witness, is the sentencing provision applicable to Defendant's convictions. This provision calls for a base offense level of 12 with adjustments for specific offense characteristics. § 2J1.3(a) and (b).[1]

---

[1]The parties agree that the 2002 version of the Sentencing Guidelines apply to Defendant.

4

Section 2J1.3(c) is a cross-reference provision and calls for application of § 2X3.1 (Accessory After the Fact) if a defendant's offense involved perjury in respect to a criminal offense and if the resulting offense level under § 2X3.1 is greater than that determined under § 2J1.3(a) and (b). The revised PSR states that the cross reference provision of 2J1.3(c) does not apply to Defendant. The Government objects to this section of the revised PSR and argues that the cross reference provision does apply.

In urging that the cross reference provision does apply, the Government states that Defendant's perjury was "in respect to a criminal offense." Defendant urges that the perjury is not "in respect to a criminal offense" unless there is sufficient evidenced to show that the person committing perjury was actually involved in the underlying criminal offense. Case law makes clear that perjury is "in respect to a criminal offense" if it occurs in a grand jury's investigation of a criminal offense and the perjurer knew when he or she testified that the grand jury was investigating the criminal offense. See United States v. Blanton, 281 F.3d 771 (8th Cir. 2002); United States v. Suleiman, 208 F.3d 32 (2d Cir. 2000); United States v. Conley, 186 F.3d 7 (1st Cir. 1999); United States v. Leon-Reyes, 177 F.3d 816 (9th Cir. 1999). There is no requirement that the person committing perjury have been involved in the underlying offense.

The evidence in this case establishes that Defendant knew at the time of her grand jury testimony that the grand jury was investigating crack cocaine trafficking. Thus, Defendant's perjured testimony was "in respect to a criminal offense" and the cross-reference provision of § 2J1.3(c) applies.

At the sentencing on Monday March 8, 2004, the Court will address the Government's request for a two level increase under U.S.S.G. § 3C1.1 (Obstruction or Impeding the

Administration of Justice) and the Defendant's motion for downward departure under U.S.S.G. § 5K2.20 (Aberrant Behavior) and § 5K2.0 (Grounds for Departure).  The Court will also consider a downward adjustment under § 3B1.2.

    IT IS THERFORE ORDERED that the Memorandum Opinion and Order filed February 27, 2004 [Docket No. 71] is hereby WITHDRAWN.

    IT IS FURTHER ORDERED that the cross reference provision of U.S.S.G. § 2J1.3(c) applies in this case for purposes of sentencing Defendant Carla Lyn Clifton.

_____
UNITED STATES DISTRICT JUDGE